Thank you. Thank you. Thank you. We'll move to our second case this morning, and it is read versus Brex Inc. All right. Can you hear me. Mark Potashnik for the plaintiffs. Yes. All right, then we'll proceed. Mr. Potashnik, you may go ahead with your argument. Thank you. Good morning, your honors. May it please the court. Summary judgment was granted against us in the district court in favor of the party with the burden of proof. We believe that summary judgment was one based on failure to apply the seven circuits applicable standard and factors to failure to consider evidence of record. That was material to decision of the claims and third failure to give us the benefit of reasonable inferences. When the summary judgment motion movement has the burden of proof, they have to show that the record is so one sided as to rule out the possibility of finding for the other side. Even when there's zero opposition file to that motion. We do not believe the defendants came close to that. Issue number one is does Brex or the defendants have bonafide commission pay plans. There's four factors that were set forth by this court in Ye and Alvarado and summarized in cases like dial within the circuit and cases outside the circuit. The seventh circuit recognizes that bonafide commissions are usually a percentage or proportion of the ultimate price passed on to the customer. Here, the evidence in the record shows that it's not a set percentage and it varies widely from about 9% to 65% to explain. I ask you a question about the way you're framing this argument and the evidence that you're relying on. As I understand it, we're, we are seeing some factual arguments that were not presented to the district court. I don't know whether that's correct, but I'd like you to address it. In particular, the way you're framing this argument in terms of the district court having a duty to consider all of the evidence of record. I had understood the district judges obligation to be to consider the evidence cited by the parties in their briefs in the district court, not to undertake a free ranging search of that record to see if there might be genuine issues of material fact somewhere in there. Well, if it's in Hotel 71, Mez Lender versus National Retirement Fund and Johnson versus Gunmanson, they say that even if there's no opposition filed, there's still a duty on the district court to determine whether the summary judgment record itself reveals a genuine issue of material fact. I understand that. Do I understand correctly that your theory is that the district judge was obligated to do the kinds of calculations that you have presented to us on appeal, even though they were not presented to the district judge. For example, showing the variations in the percentage of sales, and the inverse correlations at times between hours and pay. I believe so under the seven circuits rule, not just to take the defendants representation without testing it based on evidence that was there that it come that the pay comes out to 16 to 17% district judges are busy. Why couldn't judge Rosen Stangle count on you to present those arguments in the district court. Well, in all candor, 2020 being hindsight, I wish I had, but we thought it was an obvious, an obvious matter. Secondly, they were arguing that their pay plan provides 16 to 17% commissions, not that their pay records provide 16 to 17% commissions, we did argue in the district court that part of the pay comes from tire installations, which is obviously not a commission and a piece rate. We did argue in the district court that part of the pay comes from hourly pay for based on automotive certifications, which is, which is not commissions, we argue those two things. And, you know, the, the natural impact of those two arguments is that it's not going to come out as 16 to 17% of, of sales are our pay or commission. I mean, that's just a natural thing. I mean, we didn't take the extra step and do all the math, but we did argue that these, this pay plan has major components that are not commissions. Getting back to my point. You know, we, we did show, we did argue that this is an hourly pay plan also based on the pay plan documents, which are given to employees, which show hourly pay they're phrased in terms of statements like technicians will be compensated hourly based on their sales production. I mean, that shows emissions clearly. There are many remarks like that in the pay plan documents. We showed their advertisements to prospective technicians, which say we have the best technician hourly pay plan reward that rewards top producers up to $50 per hour. We showed many admissions through the depositions through their top management that pay depends on hours work. If hours work is a factor in determining pay and hours work is a variable in determining pay. That all clearly shows that we're not talking about commissions. We're talking about hourly pay or in the case of the tire installations. Hello. Mr. I think we've lost him. Yeah, Mr. I think we've lost you. Can you hear us? If you have audio, perhaps turn off your video camera and just use the audio. Can you hear us? We're going to try and get them reconnected. Thank you. Hello. Hello. We can hear you. We can't see you, but I think everyone can hear you. Judge Hamilton. Judge Brennan. Yes. Okay. Mr. Slade. You can hear. You cannot. Yes. Okay. Everyone can hear you, Mr. Potashnik. You may proceed. Sorry about that. I don't know what happened. I was saying that we're entitled to the reasonable benefit of the of any doubts as to this evidence with the repeatedly shows an hourly pay plan. And what we got, I don't think, is the reasonable benefit of those inferences because the district court determined that these repeated statements in the pay plans, in the advertisements, in the depositions about hourly pay or hours determining pay mean the exact opposite of what is said on the documents and in the depositions. As to the Seventh Circuit's third factor, the type of work is such that the peculiar conditions do not lend to the work to a standard eight-hour workday. There's no showing of that. Again, it was the defendant's burden to prove that. There's no showing that the workers can't be scheduled to eight-hour shifts. There's no showing of seasonality. The only evidence in the record is our expert report which examined their business records and showed no seasonality. The fourth factor is does the pay plan offend the purposes of the FLSA? Well, the cases from this court, such as Alvarado and Yee, recognize that this exemption was intended when there's irregular hours or seasonality, but there's still about 2,000 hours per year worked. To the contrary, the defendant's own pay records that we presented to the district court show that the average automotive technician works more than 2,500 hours for them. Some work close to 3,000 hours a year, and years, full years with less than 2,000 hours are extremely rare. That happened in three out of the 150 examples that we have. Issue two here is does BREX comply with the 50% rule, which in this case can be characterized as, you know, to comply with that rule, does there have to be a reconciliation between pay and commission percentages? Well, there, you know, there's the cases we cited, Tillis and Keyes, which find lack of qualification for the 7i exemption that say, yes, there does have to be such periodic reconciliation. But there's also several of the cases cited by the defendants, which say the same thing. Crawford, McInnatch, Lee, Gordon. In these cases, they rely on the fact that there was periodic settlement against the drawer commission to determine that these are bona fide commissions or that the 50% rule has been satisfied. The regulation itself is 29 CFR 779416B, which speaks in terms of a guarantee or draw against commission that will qualify for exemption provided the other conditions of the 7i exemption are met. In cases such as McInnatch cited by the defendant, it recognizes that, quote, defendant's compensation plan requires periodic settlement, comma, and aspect of a straight commission with a draw plan noted in the regulation, end quote. That's telling as to whether there has to be reconciliation here. The DOL handbook also indicates strongly that there has to be reconciliation, and the DOL handbook is entitled to judicial deference. Now, the district court appears to have been the first court to reject the idea of reconciliation. But without reconciliation between minimum pay and a commission percentage, the only way you're going to have proportionality that the Seventh Circuit identifies as a major factor of what's a commission is if you have an occasional stroke of luck. And that's something that the percentages just worked out. Issue three, again, there's just too many hours here to fulfill the burden of or to fulfill the purpose of the exemption and the FLSA. You know, Dial versus Piritano decided within the circuit recognized jury questions in strikingly similar situations, including what provides incentives, whether the pay system was in fact commission-based, whether the pay system furthered the purposes of the FLSA. These are all the same jury questions or questions of fact that we seek to present to the jury and that should have been allowed to go to a jury. The district court came up with a new test for the 50% rule with three factors, the frequency of how often the guarantee is provided, the extent to which the guarantee exceeds earned commissions, and where available information is to a common practice in the relevant industry. The problems with this test are it's unsupported. It conflicts with the Seventh Circuit's factors from both Yee and Alvarado. It seeks to base compliance on industry custom, which has been repeatedly rejected, including by the Supreme Court in Barentine versus Arkansas, Best Freight. The district court found that the guaranteed minimum pay is small in applying this test, but it only considered the minimum pay to be the amount above commissions. That's different than the way it was done in Keyes versus Carr-X. That's the opposite. And Keyes versus Carr-X is the most analogous pay plan out there, in which it was found that there was no qualification for the 7i exemption. It's the opposite of what Gordon recently did in a case cited by the defense, which found that all minimum pay was considered to be unlike commission. And it's also based on comparison to 16 to 17 percent of sales, apparently. And we've shown that pay as a percentage of sales dips as low as 9 percent. So even though this is an improper test, we also believe that the district court improperly applied that test for one additional reason also. They said that minimum pay is provided a small percentage of the time. Well, the pay records itself, which the district court obviously did look at in making that conclusion, show that minimum pay is paid to about one out of every six technicians each week. If the math is carried out, that's about 750 times a year. I cite a case from Northern District of Iowa, Buofaccio versus Tyson Foods, 2011 U.S. District Lexus, 86437, which says, in looking at the de minimis exception, that yes, it's a few minutes of unpaid time each day per employee, but consider this in the aggregate, it's sizable. One, you know, giving minimum pay to one out of six automotive technicians every week turns out to be a sizable amount. The defense has advocated for the smell test, and that's just a completely different test than the seven circuit factors set out in Yee and Alvarado. It's much easier to meet the requirements of that test. All the employer has to show is absence of an overt sham. And I cannot see, because I lost contact, how much time is left. You have about three minutes and 45 seconds. So if you would like to preserve, you should do so now. Yes, please. Sorry, I didn't do that before. I can't see. That's fine. Understood. Okay. All right. We'll move to Mr. Slade. Good morning, and may it please the court. Randall Slade on behalf of the defendants, I believe Rex and Kevin Floyd and John Keely, your honors, I'd like to start by addressing something council raised. He has argued that in this case, the actual commissions are not proportional. Now, as council has admitted, this is not an argument he raised to the district court. And in fact, his response shows why the arguments need to be made to the district court. In this particular case, we've been prejudiced because the evidence in the record below is not developed. And there is an explanation, a very simple explanation for why the plaintiff has made this argument showing nine to 65%, I believe, was his claim. Now, the Brex pay plan has essentially four components. The first component and the biggest component that determines technician pay is their hourly production scale. And the word hourly there is a bit of red herring. The district court pointed out that context is important in all these cases. But what it's really about is sales production. Each sale to a customer excluding tire sales fees and LPSG revenue is credited to the salesman. And that salesman will or technician, excuse me, will receive 15 to 16 to 17% based on how that's according to their scale. So how this happens is the sales are measured. Technicians hours are measured. And then at the end of the week, you can determine their hourly sales production, which then goes into the scale, which gives you an hourly rate for that technician, which is based solely on their sales production for those matters. And the only way the technician earns more is by producing more. If the technician works more but doesn't produce more, the pay is unaffected. And we have some examples in our brief showing the math for that. So that's the sales production. Mr. Slade, what should we do then with all of the documents in the record that calculate hourly rates for technicians under this pay plan? Well, I think how we'd explain that is an hourly rate is, as it's used in the context of this statute, an hourly pay plan is one where the sum is stipulated in advance between the employee and the employer. In other words, the employer says, I'm going to pay you $15 an hour to do this work. And the employee shows up, he knows if he works an eight-hour day, that's $120 in his pocket. Under our pay plan, the BREX pay plan, pay is driven by production. The technician knows at the beginning of the day that his pay plan… I understand your perspective. I guess what I'm trying to ask you to do is address, under the summary judgment standard, the fact that so many documents seem to be phrased in terms of calculating hourly rates. And I think what the district court addressed that is that context is important. Any term can be expressed as an hourly rate. In this case, BREX chose to express the pay plan in terms of an hourly rate as essentially a way to attract technicians, as it was their experience that technicians had better understanding or experience of hourly pay compared to strict percentages. So, I think what is important, though, and what the case law really suggests you need to do is get under the hood and see, no pun intended, and see how exactly the pay plan is driven, what puts the money in the pocket of the technicians. In this case, it's not an agreement between the employer and the employee that they're going to make a certain stipulated sum of money per hour. It's an agreement that their pay will be based upon their sales production, how much they produce in sales for that given day. And that is converted to an hourly rate, but any pay system where hours are recorded and hours have to be recorded here for purposes of compliance with the FLSA, that pay plan can be expressed in an hourly fashion. But what really sets this as a commission is the fact that the technicians are receiving their 15 to 17% of whatever their sales are. Now, that does exclude tire sales, which is the next thing I wanted to get to. The other three components here include tire sales, LPSG revenue, and bonuses for certifications. Now, tires are a separate part of the calculation because tires are expensive, for one thing, and the amount of work involved in doing a tire change takes much less skill and work from the technician than the other things where they're getting 15, 16, 17% of their sales. And so in this case, Brex's pay plan is $5 per unit from one to seven units, $8 in 70 units and above. Now, this can really scramble the numbers because the numbers that the plaintiff is using to calculate that 9% to 65% that he claimed includes tire sales. It's not just the sales production for the matters where that sales production is 15, 16, 17%. So if you have a set of tires at $150 a tire and the technician is selling $600 worth of tires for that, that gets added to that number that the plaintiff is using to claim that our pay plan is not proportional. Now, again, this is an argument that wasn't made below. So, you know, we didn't have a chance to argue this in the district court. But essentially, what plaintiff is doing is arguing that the application of the pay plan isn't consistent, where in fact, it is. So that's, that's how we account for that discrepancy. It's really driven by the tire sales and LPSG revenue and other factors that aren't consistent. And it has to be in both directions, both dragging the commission percentage, if you want to, if it could be called that, down and drag and lifting it up totally there too. But it was the defendant's burden to prove in the district court overall that there's the percentages are driving the pay, not other factors, and they did not do that. Yes. Yes, to saying that an hourly rate has to be stipulated in advance. Well, there's no legal support for that position and a variable hourly rate is a recognized type of hourly rate. Both depend on hours, to some extent. Um, under Mr potassium under the formula that breaks uses. If two technicians are working. They do the same number of jobs, same sales production over the week, and one works an extra two hours per day. What effect does that have on their, their net pay. If they qualify for the commission. They're going to be the same. But, you know, what they're assuming is that pay doesn't depend on hours well if you keep up the same pace over another 10 hours, you're going to be making a lot more so hours. Do matter hours also matter whenever you don't get the commission. If you don't get the commission. You're looking at minimum pay. And that's just incentivizes working more hours but either way minimum wage or qualifying for what they call the commission and working more, you make more. The other thing to note there is. I'm sorry I lost my train of thought. Let me come back to that. The argument on reconciliation that they gave, I think, ignores the key federal regulation which is 29 USC 779 416 which is right on point. Although the other cases from outside the district are from outside the district I think they're all consistent and they're all persuasive address the employers reconciliation. Generally, is that the expense of employees. Well, reconciliation may benefit employees in some situations that may also hurt them. But, well, it takes pay away from them later on, if they later start to beat the thresholds for a minimum. Sometimes that doesn't happen. Thank you. How is that helpful to the employee. It. It's not helpful to the employee, but it reconciliation creates a consistent percentage, which supports a finding of a commission, which did not occur here. Does that answer the question. Well, I have a question to be asking for a response to Mr Slade's argument that that entails reconciliation, actually leaves the employees worse off, which it does unquestionably you've answered that yes. Yes, I believe it. It does it takes money away from them when they're doing better. Right. Understood. Okay, and your time has expired Mr. So, we will conclude the argument there. The case is taken under advisement and our thanks to both counsel.